# IN THE UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MARK FITZHENRY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>USHEALTH GROUP, INC. and USHEALTH ADVISORS, LLC<br><br>Defendants | Case No. 2:15-cv-03062-DCN<br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

The Plaintiff Mark Fitzhenry ("Plaintiff") individually and on behalf of all others similarly situated, allege on personal knowledge, investigation of his counsel, and on information and belief as follows:

### NATURE OF ACTION

1. This case involves a scheme by Defendant USHEALTH Group, Inc. ("USHEALTH Group") (by and through their marketing arm USHEALTH Advisors, LLC ("USHEALTH Advisors") to market their services through use of pre-recorded messages and to cellular telephones using automated dialing equipment in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA").

2. As described more fully below, the defendant has likely issued a high volume of insurance quotes – and made substantial sales of products and services – derived through illegal telemarketing calls placed by a pre-recorded telemarketing system used by USHEALTH Advisors.

3. Plaintiff brings this action for statutory damages and injunctive relief under the TCPA, all arising from the illegal actions of the Defendants.

4. USHEALTH Group both delegated its marketing duties to agents such as USHEALTH Advisors and Carlos Torres ("Mr. Torres") and ratified the conduct of USHEALTH Advisors by accepting the referrals and sales generated by the telemarketing calls on behalf of USHEALTH Group.

5. Together, these Defendants contacted, and/or caused to be contacted on their behalf, Plaintiff and Class Members without their prior express written consent within the meaning of the TCPA.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA") codified as 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed Class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA. Further, Plaintiff alleges a national class, which will result in at least one Class member from a different state.

7.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq.*

8.      This Court has personal jurisdiction over USHEALTH Group because, as the companies are licensed to and do conduct the business of insurance in the State of South Carolina, they have established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of South Carolina.

9.      This Court has personal jurisdiction over USHEALTH Advisors because the conduct at issue in this case occurred, among other locations, in South Carolina.

10.      This Court has personal jurisdiction over Defendant Torres because his conduct at issue in this case occurred, among other locations, in South Carolina, including his involvement in the pre-recorded telemarketing calls to the Plaintiff. This Court also has personal jurisdiction over USHEALTH Advisors because he had direct participation in the telemarketing calls that are the subject of this lawsuit.

11.      Venue is proper in the United States District Court for the District of South Carolina because Defendants are deemed to reside in any judicial district in which they are subject to personal jurisdiction at the time the action is commenced, and because Defendants' contacts with this District are sufficient to subject them to personal jurisdiction, as the Plaintiff received the illegal telemarketing calls that are the subject of this lawsuit in this District. *See* 28 U.S.C. § 1391.

## PARTIES

12.      Plaintiff Mark Fitzhenry is, and at all times mentioned herein was, an individual citizen of the State of South Carolina, who resides in this District.

13. Defendant USHEALTH Group is a Delaware corporation with a family of subsidiaries that offer life, health, accident and disability insurance solutions. Its principal place of business is 300 Burnett Street, Suite 200 in Fort Worth, TX 76102.

14. Defendant USHEALTH Advisors is a Delaware limited liability company that partakes in a number of marketing duties for USHEALTH Group. Its principal place of business is 300 Burnett Street, Suite 300 in Fort Worth, TX 76102.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227

15. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

16. Through the TCPA, Congress outlawed telemarketing via unsolicited automated or pre-recorded telephone calls ("robocalls"), finding:

> [R]esidential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.
> 
> . . . .
> 
> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call[,] . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* § 2(10) and (12); *see also Mims*, 132 S. Ct. at 745.

3. The TCPA's most stringent restrictions pertain to computer-generated telemarketing calls placed to cell phones.

4.      The TCPA categorically bans persons and entities from initiating telephone calls using an automated telephone dialing system (or "autodialer") to any telephone number assigned to a cellular telephone service. *See* 47 C.F.R. § 64.1200(a)(1)(iii); *see also* 47 U.S.C. § 227(b)(1).

5.      On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." *Id.* (specifically recognizing "on behalf of" liability in the context of a an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)).

6.      The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See* FCC Declaratory Ruling, Memorandum and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

7.      On May 9, 2013, the FCC released a Declaratory Ruling reaffirming that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers."[1]

8.      More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.  28 F.C.C.R. at 6586 (¶ 34).

---

[1] In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al., CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

9. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at n.107.

10. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 F.C.C.R. at 6592 (¶ 46).

11. USHEALTH Group is legally responsible for ensuring that USHEALTH Advisors complied with the TCPA, even if USHEALTH Group did not themselves make the calls.

12. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not

sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## FACTUAL ALLEGATIONS RELATING TO THE PLAINTIFF'S CALL

13.     Plaintiff Fitzhenry is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

14.     On July 16, 2015, Plaintiff received a telephone call to his cellular telephone number, (843) XXX-0278.

15.     When the phone was answered, there was no one other the other line. The Plaintiff said hello into the telephone, and heard an audible click and a further delay. At that time, a pre-recorded message played, that message was automated and stated

Hello. This message is for anyone interested in affordable health insurance coverage. If you are self-employed or one of the millions of people whose employer does not contribute to their health insurance coverage, press 1 now to speak with a live representative and get a free quote about affordable health insurance coverage where you choose your own doctors and hospitals. You can also choose to be deleted from this call list by pressing 9.

4.     The facts in the preceding paragraph indicate the call was placed through an "automatic telephone dialing system" as defined in 47 U.S.C. § 227(a)(1).

5.     The Plaintiff eventually spoke with an individual, "Sarah", who asked him a few preliminary questions, including where Mr. Fitzhenry resided.

6.     After learning that Mr. Fitzhenry resided in South Carolina, the call was then transferred the call to "our South Carolina state agent".

7.     At that point, the call was transferred to Carlos Torres, a registered a USHEALTH Advisors agent.

8. Mr. Torres is registered with the South Carolina Department of Insurance, and is only registered to offer Freedom Life Insurance Company products.

9. USHEALTH Group is the brand name for products underwritten and issued by Freedom Life Insurance Company.

10. During the call with Mr. Torres stated that he works for USHEALTH advisors.

11. This fact is confirmed by Mr. Torres's registration with the South Carolina Department of Insurance, which has his registered e-mail address as: carlos.torres@ushadvisors.com.

12. That call soon disconnected.

13. Moments later, Mr. Torres contacted the Plaintiff again, and asked the Plaintiff some further questions before attempting to have him purchase the "PPO Insurance Plan" provided by USHEALTH Group.

14. Mr. Torres also directed Mr. Fitzhenry to his website, which is set up through USHEALTH Advisors.

15. Following the telemarketing calls to Mr. Fitzhenry, Mr. Torres e-mailed Mr. Fitzhenry more about the offer that he had made during the telemarketing calls. His e-mail included a number of indications of the telemarketing relationship between USHEALTH Advisors and USHEALTH Group.

16. The e-mail included a subject line that stated "Welcome to USHEALTH Group."

17. The e-mail included a statement "we're proud to work with US Health Group."

18. The e-mail included a number of marketing material attachments from USHEALTH Group.

19.   Plaintiff did not provide prior express written consent to receive the pre-recorded phone call, and has not done business with either of the defendants.

20.   As USHEALTH Group informs visitors of their website, "USHEALTH Advisors is the marketing arm of USHEALTH Group." (*See* http://www.ushealthgroup.com/BecomeAnAgent.aspx) (Last Visited August 3, 2015)

21.   The Federal Communication Commission has made that sellers such as USHEALTH Group may not avoid liability by outsourcing telemarketing:

Allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers(or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Pet. Filed by Dish Network, LLC*, CG Docket No. 11-50, 2013 WL 1934349, ¶ 37 (FCC May 9, 2013) (internal citations omitted).

22.   Under the standards outlined in the FCC's order and by other Courts interpreting that Order, USHEALTH Group is liable to the Plaintiff under the following theories:

### CLASS ACTION ALLEGATIONS

23.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

24. Plaintiff bring this action individually and on behalf of all other persons similarly situated (hereinafter referred to as "the Class") pursuant to Federal Rule of Civil Procedure 23.

25. Plaintiff propose the following Class definitions, subject to amendment as appropriate:

CLASS 1

> All persons within the United States who received a non-emergency telephone call from USHEALTH Advisors, or someone working on their behalf, placed while acting on behalf of USHEALTH Group, through the use of an artificial or prerecorded voice within the four years prior to the filing of the Complaint in this action through the date of certification.

CLASS 2

> All persons within the United States who received a non-emergency telephone call from USHEALTH Advisors, or someone working on their behalf, placed while acting on behalf of USHEALTH Group, through the use of an automated telephone dialing system within the four years prior to the filing of the Complaint in this action through the date of certification.

Collectively, all these persons will be referred to as "Class members." Plaintiff represents, and is a member of, the Classes.

26. Excluded from the Class are the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

27. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, are in the thousands.

28. Plaintiff and all members of the Class have been harmed by the acts of the Defendants.

29. This Class Action Complaint seeks injunctive relief and money damages.

30. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

31. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

32. Further, the Class can be identified easily through records maintained by USHEALTH Group and/or their telemarketing agents.

33. There are well defined, nearly identical, questions of law and fact affecting all parties.

34. The questions of law and fact, referred to above, involving the class claims predominate over questions which may affect individual Class members.

35. Such common questions of law and fact include, but are not limited to, the following:

    a. Whether USHEALTH Advisors and USHEALTH Advisors, acting on behalf of USHEALTH Group, used an artificial or prerecorded voice in its non-emergency calls to Class members' telephones.

    b. Whether the Defendants telephone system constitutes an automated telephone dialing system under the TCPA;

    c. Whether the Defendants can meet their burden of showing they obtained consent (*i.e.*, written consent that is clearly and unmistakably stated), to make such calls;

       d.       Whether the Defendants' conduct was knowing and/or willful;

       e.       Whether the Defendants are liable for statutory damages; and

       f.       Whether the Defendants should be enjoined from engaging in such conduct in the future.

36.     Plaintiff will fairly and adequately represent and protect the interests of the Classes.

37.     Further, Plaintiff has no interests which are antagonistic to any member of the Classes.

38.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal consumer protection statutes, including claims under the TCPA.

39.     A class action is the superior method for the fair and efficient adjudication of this controversy.

40.     Class wide relief is essential to compel the Defendants to comply with the TCPA.

41.     The interest of the Class members in individually pursuing claims against the Defendants is slight because the statutory damages for an individual action are relatively small, and are therefore not likely to deter the Defendants from engaging in the same behavior in the future.

42.     Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize such calls to their cellular telephones.

43. Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Classes as a whole appropriate.

44. Moreover, on information and belief, Plaintiff allege that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSES OF ACTION

### FIRST COUNT

### STATUTORY VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 *ET SEQ.*

**(Against all Defendants)**

45. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

46. The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each of the above cited provisions of 47 U.S.C. § 227 *et seq.*

47. As a result of the Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

48. Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting the Defendants' violation of the TCPA in the future.

49. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

  ## SECOND COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227 *ET SEQ*.

**(Against all Defendants)**

50. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

51. The foregoing acts and omissions of the Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

52. As a result of the Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each member of the Class is entitled to treble damages of up to $1,500 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

53. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by the Defendants in the future.

54. Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all Class members the following relief against the Defendants:

A. Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B. As a result of the Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a group;

  C. As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seek for themselves and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by the Defendants as a whole;

  D. An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid jointly and severally by the Defendants as a whole;

  E. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court deems appropriate, finding that Plaintiff are a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

  F. Such other relief as the Court deems just and proper.

              s/ Lance S. Boozer
              Lance S. Boozer (Fed ID# 10418) (SC Bar# 75803)

Dated this 4th day of August, 2015

**PLAINTIFF'S COUNSEL:**

**THE BOOZER LAW FIRM, LLC**
807 Gervais Street
Suite 203
Columbia, SC 29201
Tele:  803-608-5543
Fax:  803-926-3463
Email:  lsb@boozerlawfirm.com

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
125 Summer St., Suite 1030
Boston, MA  02110
(617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com
*Subject to Pro Hac Vice*

Matthew P. McCue, Esq.
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net
*Subject to Pro Hac Vice*