**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARK FITZHENRY, *individually and on behalf of a class of all persons and entities similarly situated*, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 2:15-cv-03062-DCN |
| USHEALTH GROUP, INC. and USHEALTH ADVISORS, LLC, ) ) ) | **ORDER** |
| Defendants. ) ) | |

This matter is before the court on defendant USHEALTH Group, Inc.'s ("UHG") motion to dismiss for lack of personal jurisdiction and motion for protective order. For the reasons set forth below, the court denies UHG's motion without prejudice, and allows limited jurisdictional discovery. The court further grants in part and denies in part UHG's motion for a protective order.

## I.  BACKGROUND

Plaintiff Mark Fitzhenry ("Fitzhenry") is a resident of South Carolina. Compl. ¶ 12. Defendant UHG is a Delaware corporation with a principal place of business in Fort Worth, Texas. Compl. ¶ 13; Kober Aff. ¶ 3. Defendant USHEALTH Advisors, LLC ("Advisors") is a Texas limited liability company with its principal place of business in Grapevine, Texas. Advisors' Ans. ¶ 14. Fitzhenry alleges that on July 16, 2014, he received a telemarketing call on his cell phone. Compl. ¶ 14. Fitzhenry alleges that when he answered the phone, there was no one on the other line, but that he heard an

audible click and further delay.  Id. ¶ 15.  At that time, Fitzhenry alleges that he hears a pre-recorded message that stated:

> Hello.  This message is for anyone interested in affordable health insurance coverage.  If you are self-employed or one of the millions of people whose employer does not contribute to their health insurance coverage, press 1 now to speak with a live representative and get a free quote about affordable health insurance coverage where you choose your own doctors and hospitals.  You can also choose to be deleted from this call list by pressing 9.

Id.  Fitzhenry claims that he eventually spoke with an individual by the name of "Sarah" who asked him a few preliminary questions, including where he resided.  Id. ¶ 4.  The call was then transferred to "South Carolina state agent" Carlos Torres ("Torres"), a registered agent of co-defendant Advisors.[1]  Id. ¶ 6–7.

Fitzhenry contends that Torres is registered with the South Carolina Department of Insurance to offer Freedom Life Insurance Company Products and that his registered email address is carlos.torres@ushadvisors.com.  Id. ¶¶ 8, 11.  Fitzhenry further alleges that UHG is the brand name for products underwritten and issued by Freedom Life Insurance Company.  Id. ¶ 9.  According to the complaint, during the call, Torres stated that he works for co-defendant Advisors.  Id. ¶ 10.  After the call was disconnected, Torres allegedly called Fitzhenry again and asked him some further questions "before attempting to have him purchase the 'PPO Insurance Plan' provided by" UHG.  Id. ¶ 13.  Torres also directed Fitzhenry to a website, set up through Advisors.  Id. ¶ 14.  Fitzhenry alleges that after the call, Torres sent him an email about the offer that included "a number of indications of the telemarketing relationship between" Advisors and UHG, including the phrase "Welcome to US Health Group" in the subject line and the following

---

[1] Advisors is a subsidiary of UHG.  UHG Reply 3.

statement: "We're very proud to work with US Health Group." Id. ¶¶ 15–17. Fitzhenry alleges that the email also included "a number of marketing material attachments from USHEALTH Group." Id. ¶ 18.

On August 4, 2015, Fitzhenry filed the present class action against UHG and Advisors, bringing the following two causes of action: (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.; and (2) knowing and/or willful violations of the TCPA. Fitzhenry seeks injunctive relief prohibiting such alleged violations of the TCPA, treble damages as provided by statute of up to $1,500 for each call that violated the TCPA, statutory damages of $500 for every call that violated the TCPA, and attorneys' fees and costs. UHG filed the present motion to dismiss on November 2, 2015. Fitzhenry filed a response on November 12, 2015, and UHG replied on November 23, 2015. The motion has been fully briefed and is now ripe for the court's review.

## II. STANDARDS

### A.     Motion to Dismiss

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, plaintiffs must prove a prima facie case of personal jurisdiction. See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences

and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000) (table); Mylan Labs, 2 F.3d at 62; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). The court, however, need not "credit conclusory allegations or draw farfetched inferences." Massellli, 2000 WL 691100, at *1 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### B.     Motion for Protective Order

The Federal Rules of Civil Procedure provide that a party may "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons who know of any discoverable matters." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting the scope of discovery. Fed. R. Civ. P. 26(c)(1). "The scope and conduct of discovery are within the sound discretion of the district court." Columbus–Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Research, Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . .in managing discovery").

### III.   DISCUSSION

UHG argues that Fitzhenry's claims against it should be dismissed because the court lacks personal jurisdiction over UHG.  Def.'s Mot. 1.

"[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied."  Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001).  First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause.  Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000).  South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause.  Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002).  "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process."  Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005).

The scope of the court's inquiry is therefore whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).  A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The analytical framework for determining whether personal jurisdiction exists differs according to which type of personal jurisdiction—general or specific—is alleged. See generally ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623–24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985). When the cause of action does not arise out of a defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

### A.     Specific Jurisdiction

Fitzhenry alleges that this court has "personal jurisdiction over [UHG] because, as the companies are licensed to and do conduct the business of insurance in the State of South Carolina, they have established minimum contacts showing they purposefully availed themselves to the resources and protection of the State of South Carolina." Compl. ¶ 8. According to the complaint, UHG "delegated its marketing duties to agents such as [co-defendant Advisors] and [Torres] and ratified the conduct of [Advisors] by accepting the referrals and sales generated by the telemarketing calls on behalf of [UHG]." Id. ¶ 4. Fitzhenry appears to concede that UHG does not have "continuous and systematic" ties to South Carolina and instead bases his argument entirely on specific

jurisdiction.  See Pl.'s Resp. 5–9.  Therefore, the only issue before the court is whether UHG had sufficient minimum contacts to subject it to specific jurisdiction in South Carolina.

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction:  (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable."  Nolan, 259 F.3d at 215–16 (citing Helicopteros, 466 U.S. at 414–16; Burger King, 471 U.S. at 472, 476–77).

The first inquiry concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (quoting Hanson, 357 U.S. at 253).  The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party.  Burger King, 471 U.S. at 475.  Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements.  Id. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").  The Fourth Circuit has held that a "single transaction is a sufficient contact to satisfy [due process] if it gives rise to the liability asserted in the suit."  Hardy v. Pioneer Parachute Co., 531 F.2d 193, 195 (4th Cir. 1976).

UHG argues that Fitzhenry cannot establish purposeful availment because UHG "has not engaged in any business activities purposefully directed towards South Carolina." Def.'s Mot. 4. UHG attaches the declaration of Konrad Kober ("Kober"), Executive Vice President and Chief Administration Officer of UHG, who is "familiar with the nature of [UHG]'s business dealings and transactions with third parties." Def.'s Mot. Ex. 1, ¶ 2. Kober asserts that: (1) UHG is a corporation organized under the laws of the State of Delaware with its principle offices located in Fort Worth, Texas; (2) UHG is a separate and distinct entity from Advisors, and each company has its own governing board, holds separate directors' meetings, makes independent decisions without approval of the other, employs separate accounting procedures, and maintains separate books and records; (3) UHG has neither requested, initiated, nor facilitated calls to any residents of South Carolina; (4) UHG has never entered into a contract for the purpose of making telemarketing calls to residents of South Carolina; (5) UHG is not licensed to do business in South Carolina and has not conducted any business transactions in South Carolina; (6) UHG has not attempted to procure or solicit business from any individual or business entity within South Carolina; (7) UHG does not maintain any corporate offices or own property in South Carolina; and (8) UHG does not have any bank accounts or employees in South Carolina. Id. ¶¶ 3–10.

In response, Fitzhenry argues that UHG's role "in targeting South Carolina as a site for a[n] [Advisors] telemarketing company that included the unsolicited robocalls [Fitzhenry] received in violation of the TCPA is sufficient to show that [UHG] conducted business in South Carolina." Pl.'s Resp. 6. Fitzhenry attaches the email he received from Torres, which includes the phrase "Welcome to US Health Group" in the subject line and

the following statement: "We're very proud to work with US Health Group and Freedom Life to offer you this coverage." Pl.'s Resp. Ex. 1. While the email demonstrates UHG's relationship with Advisors, it does not evince UHG's contacts with South Carolina. Torres is an employee of Advisors. Fitzhenry does not discuss UGH's <u>own</u> contacts within South Carolina but rather seems to impute Advisor's actions to UHG.

"[T]he mere fact that [a corporation's] subsidiaries do business in South Carolina does not confer personal jurisdiction over [the corporation]." <u>Gray v. Riso Kagaku Corp.</u>, 82 F.3d 410 (4th Cir. 1996); <u>see also</u> <u>Mylan Labs.</u>, 2 F.3d at 63 (finding that a district court did not err in holding that the parent-subsidiary relationship between two companies was insufficient to justify the exercise of personal jurisdiction over the parent company in a forum with which it did not have sufficient minimum contacts); <u>Escude Cruz v. Ortho Pharm. Corp.</u>, 619 F.2d 902, 905 (1st Cir. 1980); 4A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1069.4 (3d ed. 2014) ("When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness. Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting as merely one of its departments, personal jurisdiction over the parent corporation may not be acquired simply on the basis of the local activities of the subsidiary company.").

In order for the minimum contacts of a subsidiary to be imputed to a parent, a plaintiff must show that the subsidiary's corporate veil should be pierced. <u>See</u> <u>Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.</u>, 463 F. Supp. 2d 544, 547 (D.S.C. 2006)

9

("[P]ersonal jurisdiction over a corporate entity can be had based on the contacts of its subsidiaries only if the plaintiff is able to 'pierce the corporate veil.'"). "Piercing the corporate veil is only reluctantly allowed." Salley v. Heartland-Charleston of Hanahan, SC, LLC, No. 2:10-cv-00791, 2010 WL 5136211, at *4 (D.S.C. Dec. 10, 2010) (citing Baker v. Equitable Leasing Corp., 271 S.E.2d 596, 600 (S.C. 1980)). "In order to establish personal jurisdiction under the veil piercing doctrine, plaintiffs must establish a prima facie case that: (1) the corporation and its stockholder failed to observe corporate formalities and (2) recognizing the corporate veil would create 'fundamental unfairness.'" Id. (quoting Multimedia Pub. of S.C., Inc. v. Mullins, 431 S.E.2d 569, 571 (S.C. 1993)). Factors to be considered under the first prong include: (1) whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominate shareholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the corporation serving as a façade for the operations of the dominant shareholder. Id. (citing Hunting v. Elders, 579 S.E.2d 803, 807 (S.C. Ct. App. 2004)); see also Jones ex rel. Jones v. Enter. Leasing Co., 678 S.E.2d 819, 824 (S.C. Ct. App. 2009) (discussing methods for achieving alter ego status).

  The Fourth Circuit's decision in Gray is instructive. In Gray, the plaintiff entered into a contract with a subsidiary corporation. 82 F.3d at *1. The plaintiff sued the subsidiary and its parent company in South Carolina district court and the parent corporation moved to dismiss for lack of personal jurisdiction. Id. at *2. The Fourth Circuit first reiterated that "the mere fact that [the parent corporation's] subsidiaries do

business in South Carolina does not confer personal jurisdiction over [the parent corporation]." Id. at *3. The court went on to note that the marketing of the parent's products in South Carolina did not provide a basis for exercising personal jurisdiction. Id. The plaintiff argued that the district court should have exercised jurisdiction over the parent company by piercing the subsidiary's corporate veil. Id. In support, the plaintiff argued that (1) the parent funded the subsidiary and gave it cash infusions; (2) the subsidiary did not regularly hold formal board meetings; (3) a majority of the subsidiary's board members were associated with the parent; (4) the subsidiary sought approval from the parent before hiring officials; and (5) the parent indicated that its approval was required for resolving complaints with the plaintiff. Id. The Fourth Circuit determined that "[a]lthough these facts demonstrate that [the subsidiary] failed to observe some corporate formalities, [the plaintiff] has not sustained his burden of proving that [the parent] has minimum contacts with South Carolina." Id.

Here, Fitzhenry does not engage in this veil-piercing analysis in his response. He does not show that Advisors "was an agent of" UHG, that UHG "exerts a degree of control greater than what is normally associated with common ownership and directorship," or that Advisors "is a separate entity in name alone." Id. At most Fitzhenry has shown that Advisors and UHG share some administrative and marketing functions. These are insufficient to confer personal jurisdiction. See ScanSource, Inc. v. Mitel Networks Corp., No. 6:11-cv-00382, 2011 WL 2550719, at *5 (D.S.C. June 24, 2011) (holding that "[t]he mere fact that [the defendant], like other sophisticated parent companies, shares administrative functions and some executives with its subsidiaries" is not enough to confer jurisdiction). Advisors' marketing of UHG's products in South

Carolina does not provide a basis for this court to exercise personal jurisdiction. Therefore, at this juncture, Fitzhenry has not established a prima facie showing that UGH had sufficient minimum contacts with South Carolina to satisfy the due process standard for the exercise of personal jurisdiction.

### B.     Jurisdictional Discovery and Motion for Protective Order

Fitzhenry argues that even if the court finds that he has failed to make a prima facie showing that personal jurisdiction over UHG is proper, the court should nonetheless allow jurisdictional discovery.  Pl.'s Resp. 3, 9.

District courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]."  Mylan Labs., 2 F.3d at 64 (citation omitted).  The Fourth Circuit has stated that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery."  Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (citing McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983)).  Notably, once the parties have engaged in jurisdictional discovery, the plaintiff must establish personal jurisdiction by a preponderance of the evidence.  Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft KG v. Texport, Inc., 954 F. Supp. 2d 415, 419 (D.S.C. 2013); see also Estate of Thompson v. Mission Essential Pers., LLC, 2014 WL 4745947, at *2 (M.D.N.C. Sept. 23, 2014) ("Once jurisdictional discovery or an evidentiary hearing is completed, the plaintiff's preponderance of the evidence burden applies and the plaintiff no longer has the benefit of favorable interpretations of pleading allegations.").

Applying the aforementioned legal principles, the court concludes that jurisdictional discovery is warranted and would aid the court in determining whether personal jurisdiction of UHG exists.  While Fitzhenry has failed to allege any elements required for veil piercing or provide any evidence suggesting that Advisors has abused the corporate form or that UHG itself has contacts with South Carolina, the parties have engaged in very little if any discovery.  Importantly, UHG has not responded to Fitzhenry's First Set of Interrogatories or First Set of Requests for Production of Documents.  These discovery requests are subject to the motion for protective order in which UHG requests an order staying the deadline for UHG to respond to the written discovery requests served by Fitzhenry and granting UHG protection from any additional discovery requested by Fitzhenry pending the court's ruling on UHG's motion to dismiss.

The court finds that UHG's answers to Fitzhenry's First Set of Interrogatories would provide the court guidance as to whether it has personal jurisdiction over UHG.  For example, Fitzhenry asks UHG to describe its involvement in the issuance of quotes by Advisors to residents in South Carolina, including, but not limited to, the number of times UHG employees visited South Carolina.  See Mot. for Protective Order, Ex. 1 at 7.  Fitzhenry further asks UHG to identify any of its employees who have ever been to South Carolina for any business related purpose, the dates of those visits, and their purpose.  Id.  UHG's response to these questions and the other interrogatories would undoubtedly shed light on what contacts, if any, UHG has within South Carolina.  Further, Fitzhenry's First Set of Interrogatories consists of only six questions to which it would not be difficult or expensive to respond.  Because the court finds that UHG's answers to Fitzhenry's First

13

Set of Interrogatories would be helpful in ruling on the motion to dismiss, the court orders UHG to respond within fifteen days of the date of this order.

However, the court finds it unnecessary and unduly burdensome to require UHG to respond to Fitzhenry's First Set of Request for Production of Documents or any other forthcoming discovery requests pending resolution of the personal jurisdiction issue. For example, Request for Production 6 requests production of "all communications by and between [UHG] and [Advisors] related to telemarketing activities." Mot. for Protective Order, Ex. 1 at 17. The court finds that this request, as well as the other requests for production, are unduly burdensome and would subject UHG to excessive expense given the circumstances surrounding the procedural posture of this action. Should the court find—after the parties have engaged in limited jurisdictional discovery—that it does have personal jurisdiction over UHG, Fitzhenry may renew his First Set of Requests for Production of Documents.

Accordingly, the Court, in its discretion, finds that limited discovery is necessary on the issue of UHG's contacts with the State of South Carolina. Specifically, the court orders UHG to respond to Fitzhenry's First Set of Interrogatories. However, the court finds that Fitzhenry's First Set of Requests for Production of Documents is unnecessarily burdensome at this stage of the litigation. Upon the completion of jurisdictional discovery, UHG may supplement, revise, and refile the instant motion to dismiss if the propriety of this court exercising personal jurisdiction over UHG is still in dispute.

## IV.   CONCLUSION

For the reasons set forth above, defendant USHEALTH Group, Inc.'s motion to dismiss is **DENIED WITHOUT PREJUDICE AND WITH LEAVE TO REFILE**. Further, the court **GRANTS IN PART** and **DENIES IN PART** USHEALTH Group, Inc.'s motion for protective order.  The court **ORDERS** USHEALTH Group, Inc to respond to Fitzhenry's First Set of Interrogatories within fifteen (15) days of the date of this order.  However, USHEALTH Group, Inc. is protected from any additional discovery pending disposition of the jurisdictional issues.  Upon the completion of limited jurisdictional discovery, as fully set forth above, USHEALTH Group, Inc. may supplement, revise, and refile the instant motion to dismiss.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 27, 2016**
**Charleston, South Carolina**